UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHADWICK TROEGER,
                                Plaintiff,

            -v-

JETBLUE AIRWAYS CORP., *et al.*,
                                Defendants.

23-CV-10859 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

This is an employment discrimination case brought by Chadwick Troeger against his

former employer, JetBlue Airways Corp. ("JetBlue"), and former supervisor, William Petersen

(collectively, "Defendants").  Before the Court are Defendants' motions, including a motion for

sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure (ECF No. 79), and a

motion to dismiss pursuant to Rules 37(b)(2)(A)(v) and 41(b) and for sanctions pursuant to Rule

37(b)(2)(C) (ECF No. 99).  For the reasons that follow, Defendants' motions are granted in part

and denied in part.

## I.    Background

The Court assumes familiarity with the factual background in this case as set forth in its

previous opinion.  (*See* ECF No. 52.)  Chadwick Troeger is a gay man, an atheist, and a former

JetBlue commercial pilot.  (*See* ECF No. 37 ("SAC") ¶¶ 2, 50, 71.)  Troeger brought this action

alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.*; and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-502(a) *et seq.*  (*See*

*generally* SAC.)  He alleges that, between February and March 2020, he was subjected to a

pattern of discrimination based on sexual orientation and religion, as well as retaliation, culminating in his termination from JetBlue. (*Id.*)

On December 17, 2024, this Court granted in part and denied in part Defendants' motions to dismiss Troeger's Second Amended Complaint ("SAC"). (ECF No. 52.) The Court denied the motions to dismiss as to several of Troeger's claims including: his Title VII hostile work environment claims against JetBlue; his NYSHRL and NYCHRL discrimination claims against Petersen; his NYSHRL and NYCHRL retaliation claims against both defendants; his NYSHRL and NYCHRL aiding-and-abetting claims against Petersen; and his NYCHRL employer-liability claim against JetBlue. (*See generally id.*)

Following the Court's December 17 order, the case stalled, as Troeger's first counsel withdrew (ECF No. 66), and Troeger and his new counsel, Joshua Stahley, failed to comply with the discovery deadlines in the Court's scheduling and case management order. (ECF Nos. 75, 76, 78.)

On August 30, 2025, Jet Blue filed its motion for sanctions (ECF No. 79) and accompanying memorandum of law (ECF No. 80). On September 15, 2025, Troeger filed his opposition to the motion for sanctions. (ECF No. 85.) On September 16, 2025, the Court held a telephonic conference with the parties to discuss the discovery disputes and pending motion for sanctions. Following the conference, the Court ordered Troeger: to produce responsive documents to Defendants' discovery requests by close of day on September 17, 2025; to serve responses to Defendants' deficiency letters by September 23, 2025; and, to confirm his availability for a live deposition in New York in early October by September 23, 2025. (ECF No. 86.) On September 26, 2025, Defendants filed a letter on the docket informing the Court that Troeger had failed to comply with all three directives. (ECF No. 89.)

The Court then held another telephonic conference with the parties on October 3, 2025, after which it ordered Troeger: to produce Bates-stamped documents in response to Defendants' document requests by October 8, 2025; to serve complete responses to Defendants' deficiency letters by October 8, 2025; and, to pay reasonable expenses, including attorney's fees, incurred in connection with Troeger's failure to comply with the Court's previous orders.  (ECF No. 90 at 1.)  In that order, the Court scheduled an in-person conference on October 16, 2025, in which it ordered Troeger as well as counsel for all parties to appear.  (*Id.* at 2.)

On October 9, 2025, Defendants informed the Court that Troeger again had failed to comply with the Court's directives.  (ECF No. 91.)  In response, on October 13, 2025, Stahley moved to withdraw as counsel for Troeger, citing "irreconcilable differences regarding discovery obligations and case strategy, as well as a material breakdown in communication."  (ECF No. 93 at 1.)  That same day, Troeger separately filed a motion to adjourn the in-person conference scheduled for October 16, 2025, pending resolution of the withdrawal motion.  (ECF No. 94.)  On October 15, 2025, the Court filed an order in which it denied the request to adjourn the in-person conference and reserved ruling on the motion to withdraw.  (ECF No. 96.)  In that order, the Court stated that the "failure to appear at the October 16, 2025 conference by either [Troeger] or [Stahley] will result in dismissal of this action with prejudice."  (*Id.* at 1.)

Troeger failed to appear at the October 16, 2025 in-person conference.  The Court ordered Troeger to file a letter on the docket by October 23, 2025, explaining his failure to appear and why the action should not be dismissed with prejudice.  (ECF No. 97.)  Troeger filed a letter in which he purported to: "(1) explain [his] non-appearance on October 16; (2) show good cause why dismissal with prejudice is unwarranted; and (3) present a concrete plan to prosecute this case.  (ECF No. 98 at 1.)  In that letter, Troeger stated that he would serve

additional documents responsive to Defendants' discovery requests and any amended written responses by November 1, 2025; would advise the Court as to whether he would proceed pro se or substitute counsel by November 6, 2025; and would confer with Defendants and submit a letter setting forth a deposition schedule by November 8, 2025. (*Id.*)

On November 18, 2025, Defendants informed the Court that, to date, Defendants had not received any documents or a proposed deposition schedule, nor did Troeger provide an update on the status of his attempt to obtain new counsel. (ECF No. 108 at 1-2.) As a result, Defendants were unable to take Troeger's deposition, which was scheduled for November 17 and November 18, or the depositions of other witnesses. (*Id.* at 2.) Consequently, Defendants requested that the Court stay all deadlines in the case while it decides the pending motions before it, which the Court granted by text order. (*Id.*; ECF No. 109.)

On January 26, 2026, Troeger filed another letter on the docket explaining his interest in re-engaging Stahley and authorizing him to produce the outstanding discovery responsive to Defendants' requests. (ECF No. 110 at 1.) Troeger filed a motion that same day in which he requested leave to file a short sur-reply memorandum of law in further opposition to Defendants' motion for sanctions under Fed. R. Civ. P. 11 (ECF Nos. 79, 80), limited to new arguments and new evidentiary material first raised in Defendants' reply memorandum (ECF No. 88) and in Defendants' subsequent letters (ECF Nos. 89, 92, 99). (ECF No. 111 at 1.) In the alternative, the motion requested that the Court disregard that new matter in resolving the Rule 11 motion. (*Id.* at 3.) Defendants filed an opposition on January 27, 2026. (ECF No. 112.)

## II.    Discussion

### A.    Dismissal and Sanctions under Rule 37

Defendants request dismissal under Rules 37(b)(2)(A)(v) and 41(b) and sanctions under Rule 37(b)(2)(C).  Because this Court concludes that dismissal and sanctions are appropriate under Rule 37, it does not address Rule 41(b).

### 1.    Dismissal with Prejudice under Rule 37

Under Rule 37(b)(2)(A)(v), the court may dismiss an action where a party "fails to obey an order to provide or permit discovery."  The Second Circuit has identified several factors that may be useful in evaluating a district court's exercise of discretion to dismiss an action under Rule 37, including: (1) whether the non-compliant party has been warned of the consequences of noncompliance; (2) the duration of the period of noncompliance; (3) the willfulness of the non-compliant party or the reason for noncompliance, and; (4) the efficacy of lesser sanctions.  *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009).

Here, dismissal is warranted under Rule 37.  First, Troeger was warned by this Court of the consequences of noncompliance with its multiple discovery orders, including an explicit warning that the failure of either Troeger or his counsel to appear in person for the October 16, 2025 conference would result in dismissal of the action with prejudice.  (ECF No. 96 at 1.)

Second, for nearly six months, Troeger repeatedly failed to comply with this Court's Civil Case Management Plan and Scheduling Order (ECF Nos. 60, 75) and the deadlines set forth therein.  Indeed, by the operative (and already extended) deadline for fact discovery, Troeger had not produced documents.  (*See id.* (setting April 13, 2025 as the deadline for Troeger to respond to Defendants' discovery requests); ECF No. 91 (reflecting that, as of October 9, 2025, Troeger still had not adequately responded to those requests); ECF No. 102 at 3

(counsel for JetBlue stating "we don't have any meaningful discovery from plaintiff despite the fact that we served discovery requests on plaintiff in mid-March. So it's been six months, and we don't have a single document from the plaintiff.").) Such a prolonged period of noncompliance is more than sufficient to support dismissal. *See, e.g., Peters–Turnbull v. Bd. of Educ. of City of New York*, No. 96-CV-4914, 1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999) (holding that a delay of five to ten months "falls comfortably within the time frames found sufficient in successful . . . motions to dismiss"); *Brow v. City of N.Y.*, 391 F. App'x 935, 936-37 (2d Cir. 2010) (summary order) (nearly six-month delay supported dismissal); *Paige v. Lacoste*, No. 10-CV-3356, 2014 WL 4804866, at *10 (E.D.N.Y. Sept. 26, 2014) (six months); *Deptola v. Doe*, No. 04-CV-1379, 2005 WL 2483341, at *2 (E.D.N.Y. Oct. 7, 2005) (four months).

Third, Troeger's prolonged noncompliance was willful. *See Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986) ("The sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to willfulness, bad faith, or any fault of the [party]." (cleaned up)). "A persistent refusal to comply with discovery orders constitutes sufficient evidence of willfulness, bad faith, or fault." *Peña v. Chocolate*, No. 10-CV-4067, 2012 WL 3957474, at *3 (S.D.N.Y. Sept. 10, 2012) (internal quotation marks omitted).

Here, despite receiving notice—through counsel—of the Court's orders requiring him to respond to discovery requests and to appear in person, Troeger repeatedly failed to comply. Such conduct supports a finding of willfulness. *See Coach, Inc. v. O'Brien*, No. 10-CV-6071, 2011 WL 6122265, at *3 (S.D.N.Y. Nov. 28, 2011) (deeming noncompliance willful where court orders were mailed directly to the party and repeatedly ignored). In fact, in his January 26 letter to the Court, Troeger states that he "instructed [his] counsel not to serve the [discovery]

6

production." (ECF No. 110 at 1.) In that same letter, Troger states that he "had received the Court's October 15 order making clear that [his] appearance was mandatory and that failure to appear could result in dismissal with prejudice." (*Id.* at 2.) Troeger states that his failure to attend was due to "financial strain and stress" (*id.*) which he failed to communicate with the Court or with Stahley. Although the Court is sympathetic to Troeger's financial difficulties, it is well established that "a party's lack of funds . . . does not justify a party's complete disregard of the rules of the court or its failure to notify the court of its predicament." *ILGWU Nat. Ret. Fund v. Empire State Mills Corp.*, 696 F. Supp. 885, 888 (S.D.N.Y. 1988); *accord Bank of N.Y. v. Meridien Bao Bank Tanz. Ltd.*, No. 95-CV-4856, 1998 WL 417510, at *3 (S.D.N.Y. July 24, 1998) (Sotomayor, J.); *Fed. Election Comm'n v. Beatty for Cong. Comm.*, No. 86-CV-3894, 1987 WL 14658, at *2 (S.D.N.Y. Oct. 23, 1987).

Fourth, lesser sanctions would not secure Troeger's compliance. Although a court should consider the efficacy of lesser sanctions before entering default judgment against a noncompliant party, *see Agiwal*, 555 F.3d at 302, Troeger's repeated disregard of Court orders and his failure to engage with Defendants' counsel, his own counsel, and the Court demonstrate that lesser sanctions would be futile. (*See, e.g.*, ECF No. 93 at 1 (noting a breakdown in communication between Troeger and his counsel).) Under these circumstances, any sanction short of dismissal would amount to "an exercise in futility." *Koch v. Rodenstock*, No. 06-CV-6586, 2010 WL 2010892, at *7 (S.D.N.Y. Apr. 23, 2010), *report & recommendation adopted*, No. 06-CV-6586, 2010 WL 2010900 (S.D.N.Y. May 18, 2010).

Finally, having concluded that dismissal is warranted, the Court must determine whether dismissal should be with or without prejudice. The Court afforded Troeger substantial time and repeated opportunities to demonstrate an intent to engage in the necessary steps to prosecute his

7

claims.  Instead, Troeger materially impeded the progress of this litigation by repeatedly failing to comply with the Court's discovery orders.  Under these circumstances, the severe sanction of dismissal with prejudice is appropriate.  Dismissal without prejudice would permit Troeger to engage in this litigation only when convenient, foreseeably prolonging an already protracted case, and would fail to serve the deterrent function that the Supreme Court has recognized dismissals with prejudice validly promote.  *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  Moreover, dismissal with prejudice under Rule 37 is the norm in this Circuit.  *Jin Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642, 2019 WL 360099, at *6 (E.D.N.Y. Jan. 11, 2019), *report and recommendation adopted*, No. 15-CV-3642, 2019 WL 356939 (E.D.N.Y. Jan. 29, 2019); *see Dungan v. Donahue.*, No. 12-CV-5139, 2014 WL 2941240, at *7 (E.D.N.Y. June 30, 2014); *Coleman v. Preston*, No. 17-CV-5031, 2018 WL 5984855, at *2 (E.D.N.Y. July 24, 2018), *report and recommendation adopted*, No. 17-CV-5031, 2018 WL 5983376 (E.D.N.Y. Nov. 13, 2018); *Lopa v. Safeguard Props. Mgmt., LLC*, No. 14-CV-3193, 2018 WL 3104456 (E.D.N.Y. May 16, 2018), *report and recommendation adopted*, No. 14-CV-3324, 2018 WL 3019875 (E.D.N.Y. June 18, 2018), and *report and recommendation adopted*, No. 14-CV-3193, 2018 WL 3094940 (E.D.N.Y. June 22, 2018); *Sease v. Doe*, No. 04-CV-5569, 2006 WL 3210032, at *3 (S.D.N.Y. Nov. 6, 2006).  The Court finds no reason to depart from that norm here.

For these reasons, the Court concludes that dismissal with prejudice is warranted.

### 2.    Monetary Sanctions under Rule 37

In its October 3, 2025 Order, this Court directed Troeger to pay reasonable expenses, including attorney's fees, as required by law.  (ECF No. 90 at 1.)  *See also* Fed. R. Civ. P. 37(b)(2)(C) ("[T]he court must order the disobedient party, the attorney advising that party, or

both to pay the reasonable expenses, including attorney's fees, caused by the failure.")  At the October 16, 2025 conference, Stahley indicated that he would be willing to cover any portion of Defendants' counsel's fees (ECF No. 106 at 17), but on October 24, 2025, Defendants informed the Court that neither Troeger nor Stahley had engaged in a meet and confer regarding the Rule 37 sanctions, demonstrating "the same pattern of delay and obstructionism that resulted in the imposition of the[] sanctions."  (ECF No. 99 at 1-2.)  Consequently, Defendants now request the Court issue an order pursuant to Fed. R. Civ. P. 37(b)(2)(C) directing (1) Troeger to pay JetBlue $5,000 and Petersen $5,000 by November 15, 2025; and (2) Stahley to pay JetBlue $5,000 and Petersen $4,000.  (*Id.* at 3.)

Defendants' request is granted.  *Seena Int'l Inc. v. One Step Up, Ltd.*, No. 15-CV-1095, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2026) ("Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled.").  Troeger and Stahley are directed to make the payments within thirty days of the date of this Order.

### B.    Sanctions under Rule 11

Defendants also move for Rule 11 sanctions against Stahley, Troeger, and Troeger's prior counsel, David Ross Ehrlich and Debra L. Wabnick.  (ECF No. 99-1 at 6; *see generally* ECF No. 79; ECF No. 80.)

When attorneys or parties file "a pleading, written motion, or other paper" with the Court, they "certif[y]" that they are not doing so "for any improper purpose" such as harassment or delay, that any legal contentions in the filing are "nonfrivolous," and that any factual contentions in the filing are supported by available evidence.  Fed. R. Civ. P. 11(b)(1)-(3).  The filing "violates Rule 11 if it is 'frivolous, legally unreasonable, or factually without foundation, even

though not signed in subjective bad faith.'" *Manhattan Enter. Grp., LLC v. Higgins*, No. 18-CV-06396, 2019 WL 4601524, at *2 (S.D.N.Y. Sept. 22, 2019) (quoting *Weschler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002)).  Parties who believe that such a violation has occurred may move for sanctions.  *See* Fed. R. Civ. P. 11(c)(2).

The Court has discretion under Rule 11 to sanction "for, among other things, misrepresenting facts or making frivolous legal arguments."  *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 459 (S.D.N.Y. 2023) (quoting *Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam)); *see* Fed. R. Civ. P. 11(c)(1).  These sanctions are proper "only upon 'a showing of objective unreasonableness on the part of the attorney or client signing the papers.'"  *Moshell v. Sasol Ltd.*, No. 20-CV-01008, 2021 WL 3174414, at *16 (S.D.N.Y. July 24, 2021) (quoting *ATSI Commc'ns v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009)); *see also Sang Lan v. Time Warner, Inc.*, No. 11-CV-2870, 2015 WL 4469838, at *1 (S.D.N.Y. July 13, 2015) ("Attorneys and parties who violate Rule 11(b) or are responsible for its violation may be subject to sanctions.").  For example, a factual statement is not sanctionable unless it is "utterly lacking in support."  *Moshell*, 2021 WL 3174414, at *16 (quoting *In re AOL, Inc. Repurchase Offer Litig.*, No. 12-CV-03497, 2013 WL 6331802, at *3 (S.D.N.Y. Dec. 5, 2013)).

Defendants argue that Troeger "has repeatedly violated Fed. R. Civ. P. 11(b)(3) by making a series of false statements regarding his well-documented substance abuse issues in the December 2023 Complaint, the January 2024 Charge he filed with the Equal Employment Opportunity Commission (which was submitted under penalty of perjury), the June 2024 Amended Complaint, the August 2024 Second Amended Complaint, and his October 2024 opposition papers in response to Defendants' motions to dismiss."  (ECF No. 80 at 22.)  According to Defendants, Troeger's claim would "strain credulity" if he had truthfully admitted

10

in his pleadings that he had a history of drug and alcohol use while employed at JetBlue.  (*Id.* at 23.)  Similarly, Defendants argue that Stahley violated Rule 11 by prosecuting claims that he knew or should have known were factually and legally meritless, given Troeger's well-documented history of substance abuse.  (*Id.* at 24.)

The Court declines to impose Rule 11 sanctions for two reasons.  First, post-termination conduct is not relevant to the employer's intent at the time of termination.  *See e.g.*, *Russell v. Drivers Mgmt., LLC*, No. 18-CV-682, 2020 WL 7419664, at *9 (D. Conn. Feb. 11, 2020) ("[The employee's] actions after his termination cannot be a non-retaliatory justification for that termination."); *Stein v. New York State Dep't of Motor Vehicles*, 841 F. Supp. 42, 50 (N.D.N.Y. 1993) ("The court finds this argument unpersuasive, since it has located no authority which would permit post-discharge conduct to be utilized in order to prove that the discharge itself resulted from a retaliatory motive."), *aff'd sub nom. Stein v. New York State Dep't of Motor Vehicle*, 54 F.3d 766 (2d Cir. 1995).  Thus, Defendants' evidence that Troeger's "use of methamphetamine and other illicit substances" continued after his termination from JetBlue is not directly relevant to the allegations in the SAC and cannot support a finding of sanctionable conduct under Rule 11.  (ECF No. 80 at 12.)

Second, Federal Rule of Civil Procedure 11 does not permit courts to resolve contested factual disputes or make credibility determinations.  *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 331 (S.D.N.Y. 2013) ("[A] pre-trial motion for sanctions is not the appropriate vehicle to test the truth or falsity of allegations in [the] complaint.").  Troeger's SAC expressly alleges that he was forced to falsely claim he had substance abuse issues in order to maintain his employment at JetBlue.  (SAC ¶ 93.)  Accordingly, it would be improper to sanction Troeger or his counsel

11

based on Troeger's alleged statements to Cornerstone—the rehabilitation facility he was purportedly compelled to attend—that he used cocaine while employed at JetBlue.

Nor can the Court conclude, on this motion, that Troeger's denial of a substance abuse disorder was "objectively false," as Defendants contend. (ECF No. 88 at 7.) The SAC does not allege that Troeger never used illegal substances; rather, it alleges that he did not suffer from a substance abuse disorder and that JetBlue's actions premised on such a disorder were pretextual. (*See* SAC ¶ 164.) That allegation is supported by Dr. Gitlow's 2021 evaluation, which concluded that Troeger suffered from "no addiction or psychological condition," corroborating Troeger's position. (ECF No. 85 at 12; SAC ¶¶ 84, 219.) Likewise, Troeger's February 2020 hair follicle test showing a positive result for amphetamines may admit of competing explanations, including, as Troeger contends, a false positive attributable to antihistamines, nasal sprays, or cold medications. (SAC ¶ 55.) Ultimately, whether Troeger abused drugs or alcohol, the meaning of any alleged admissions, and the probative value of any purported test results are credibility determinations and disputed issues of fact that cannot be resolved on a Rule 11 motion.

Likewise, Defendants' contention that Troeger's internet history plainly reflects "deeply concerning searches relating to the purchase of drugs," among other inquiries (ECF No. 88 at 4), does not warrant sanctions. Troeger's SAC alleges that he recognized some of the data on the tablet as "belonging to his mother" and that "[t]here was also personal electronic data that [he] had never seen before." (SAC ¶ 29.) Defendants' reliance on Troeger's internet search history therefore highlights, rather than resolves, disputed factual issues—issues that cannot be adjudicated on a Rule 11 motion.

12

If the Court were to accept Defendants' argument that the allegations in the SAC lack any factual basis and, as a result, sanction Troeger and his counsel, it would be tantamount to discrediting the truth of these allegations. "Such a finding, if warranted, is and should remain in the discretion of the fact finder. A motion for sanctions cannot serve as an end-run around the fact finder's exclusive role to resolve factual disputes." *In re Pfizer*, 288 F.R.D. at 298.

Because the Court declines to impose Rule 11 sanctions on Troeger, Stahley, or Troeger's prior counsel, Troeger's letter motion for leave to file a sur-reply related to the Rule 11 sanctions (ECF No. 111) is denied as moot.

## III. Conclusion

For the foregoing reasons, it is hereby ORDERED that:

1. Troeger's complaint is DISMISSED with prejudice pursuant to Rule 37;

2. Pursuant to Rule 37, Troeger is ordered to pay JetBlue $5,000 and Petersen $5,000 within thirty days of the date of this order; and Stahley is ordered to pay JetBlue $5,000 and Petersen $4,000 within thirty days of the date of this order;

3. Defendants' motion for sanctions under Rule 11 is DENIED.

The Clerk of Court is directed to (1) terminate the motions at ECF Nos. 79, 91, 93, 99, 111, and 113, (2) enter judgment of dismissal, and (3) close this case.

SO ORDERED.

Dated: February 27, 2026
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

13