UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHADWICK TROEGER,
Plaintiff,

-v-

JETBLUE AIRWAYS CORP., *et al.*,
Defendants.

23-CV-10859 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

On February 27, 2026, this Court issued a Memorandum and Order (the "Order") granting JetBlue Airways Corp.'s and William Petersen's (collectively, "Defendants") motion to dismiss pursuant to Rules 37(b)(2)(A)(v) and 41(b) of the Federal Rules of Civil Procedure and for sanctions pursuant to Rule 37(b)(2)(C). (ECF No. 116 ("Order").) Also in the Order, the Court denied Defendants' motion for sanctions pursuant to Rule 11. (*Id.*)

Plaintiff Chadwick Troeger now moves to alter or amend the Order under Rule 59(e) of the Federal Rules of Civil Procedure. (ECF No. 118.) For the reasons that follow, Troeger's motion is denied.

## I. Background

The Court assumes familiarity with the factual background as set forth in its previous orders. (*See* ECF No 52; ECF No. 116.) As relevant here, on February 27, 2026, the Court granted Defendants' motion to dismiss with prejudice and awarded sanctions pursuant to Rule 37, while also denying Defendants' motion for sanctions under Rule 11. (*See generally* Order.) This Court did so after the case stalled amid Troeger's changes in representation and repeated failures to comply with discovery deadlines in the Court's Civil Case Management Plan and Scheduling Order (the "CMP"). (Order at 2-5; *see also* ECF Nos. 75, 76, 78.)

Throughout the spring and summer of 2025, Troeger failed to satisfy his discovery obligations despite the Court's granting a series of extensions. (*See generally* ECF Nos. 75, 76, 77, 78.) On August 30, 2025, JetBlue Airways Corp. filed its motion for sanctions (ECF No. 79), to which Troeger responded on September 15, 2025 (ECF No. 85). On September 16, 2025, the Court held a conference with the parties concerning the discovery disputes and pending sanctions motion, which yielded a specific order regarding discovery deadlines from the Court. (ECF No. 86.)

After Troeger failed to comply with the Court's September 16 order, the Court held another conference on October 3, 2025, resulting in an order directing Troeger (1) to produce documents in response to Defendants' requests by October 8, 2025; (2) to serve complete responses to Defendants' deficiency letters by October 8, 2025; and (3) to pay reasonable expenses, including attorney's fees, incurred in connection with Troeger's failure to comply with prior orders. (ECF No. 90.) Troeger and counsel were warned that further failures, including failing to appear at the in-person conference on October 16, 2025, would result in dismissal. (ECF No. 96.) It was only after further noncompliance, including Troeger's failure to appear at the October 16 conference, that the Court granted Defendants' motion for dismissal pursuant to Rule 37. (*See* Order at 3-4; ECF Nos. 91, 96, 108.)

On March 27, 2026, Troeger filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e) with a supporting memorandum of law. (ECF No. 118 ("Mot."); ECF No. 119 ("Mem.").) Defendants filed a joint memorandum of law in opposition on April 10, 2026. (ECF No. 121 ("Opp.").) On April 17, 2026, Troeger filed his reply. (ECF No. 122 ("Reply").) In support of the motion for reconsideration, Troeger also filed a supporting declaration of his counsel, Joshua M. Stahley (ECF No. 120), which Troeger subsequently conceded was filed

without the Court's leave, in violation of Local Rule 6.3. (Reply at 8-9.) Troeger nonetheless requests that the Court either consider it as duplicative of already-docketed material or disregard it and grant Troeger leave to withdraw Stahley's Declaration. (*Id.*)[1]

## II. Legal Standard

Motions to alter or amend a judgment are governed by Federal Rule of Civil Procedure 59(e) as well as Local Rule 6.3 and must be filed within twenty-eight days of the entry of the judgment. Fed. R. Civ. P. 59(e). Such motions "may be granted only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (internal quotation marks omitted).[2] Rule 59(e) empowers district courts to "rectify [their] own mistakes," *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982), not to permit parties "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127-28 (2d ed. 1995)).

## III. Discussion

### A. Rule 37 Dismissal

In seeking reconsideration, Troeger fixates on the Court's finding that "for nearly six months, Troeger repeatedly failed to comply" with the Court's directives (Mem. at 6-7; Reply at 7 (quoting Order at 5)), as well as the Court's parenthetical reference to defense counsel's

---

[1] In light of Troeger's representation that Stahley's Declaration "do[es] not alter the record," the Court decides this motion based on the existing docket and denies as moot Troeger's request to withdraw Stahley's Declaration. (Reply at 8-9.)

[2] Troeger's motion rests on contentions of error in the Order; he does not claim or present any new evidence or change in controlling law. (*See generally* Mem.; Reply.)

statement at the September 16 conference that after six months, Troeger had failed to produce "a single document" (*id.*).[3] Troeger contends that the Court failed to credit his efforts, beginning September 18, 2025, to cure his noncompliance with the CMP, contaminating the analysis of whether dismissal with prejudice was the proper sanction. (Mem. at 10-12; Reply at 7-8.) Belated attempts to cure noncompliance do not provide an escape from dismissal, however, where faithful application of the relevant factors—the so-called *Agiwal* factors—yields that outcome. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

Courts draw on the *Agiwal* factors in evaluating whether to exercise discretion to dismiss an action pursuant to Rule 37, including: (1) whether the non-compliant party has been warned of the consequences of noncompliance; (2) the duration of the period of noncompliance; (3) the willfulness of the noncompliant party or the reason for noncompliance, and; (4) the efficacy of lesser sanctions. *See id.* at 302-03. Troeger concedes that he was warned but contends that a combination of remorse and attempted cure renders his sustained noncompliance neither sufficiently willful nor sufficiently severe to warrant the most extreme sanction. (Reply at 7-8.) This claim is at odds, however, with both the definition of willfulness and the pattern of the cases cited in the Order, including *Agiwal* itself. Non-compliance may be deemed willful "when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Manta Indus. Ltd. v. Anand*, No. 16-CV-8308, 2024 WL 4872260, at *4 (S.D.N.Y. Nov. 22, 2024) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 536 (S.D.N.Y. 2002)). All three of these criteria are on display here: the

[3] Troeger correctly notes in his reply that the latter remark is from the conference held on September 16, 2025 and was accurate as of that date (Reply at 7), correcting his initial attribution of that remark to the conference on October 16, 2025 (Mem. at 6).

Court repeatedly clarified the stakes (ECF Nos. 96; 97), Troeger acknowledged them (*see* ECF No. 98 at 1-2), and his noncompliance was his responsibility (ECF No. 110).

Moreover, the relevant record is one of persistent noncompliance—Troeger failed to appear, missed repeated deadlines, and instructed his counsel to not serve discovery—and it is that conduct, not any subsequent expression of remorse, that drives the Court's analysis when considering a motion to dismiss pursuant to Rule 37. (Order at 6-7.) Troeger attributes his instruction to his counsel not to serve discovery to "outside interference." (Mem. at 11.) Yet Troeger's instruction not to serve the October 8 production belies a pattern which was the rule, not the exception, in Troeger's conduct, and neglects his fundamental obligation to comply with court orders. *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990). Moreover, Troeger still offers no sufficient explanation for his failure to appear at the conference on October 16, 2025, despite the Court's warning, nor justification for his extended failure to comply with the CMP.

This record closely mirrors the one in *Agiwal*, where the Second Circuit affirmed dismissal notwithstanding the plaintiff's language barriers and health issues. There, the court found that over roughly six months, the plaintiff defied every court order, each of which had expressly warned that sanctions, including dismissal, were possible. *Agiwal*, 555 F.3d at 303. Troeger's conduct fares no better even when measured against his selected authorities. In *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, the Second Circuit vacated a Rule 37 dismissal issued without warning for a first offense, manifestly unlike the extended, repeated notices present here. 694 F.3d 155, 159-60 (2d Cir. 2012). In contrast, the Second Circuit upheld sanctions in *J.C. v. Zimmerman*, based in substantial part on the party's record of noncompliance, reiterating that violation of a discovery order leaves district courts "'free to consider the full record in the case' in determining both the need for and character of a

contemplated sanction." 150 F.4th 136, 147 (2d Cir. 2025) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). That comprehensive review of the record is exactly what the Court did here in confronting a period of noncompliance longer than cases Troeger seeks to distinguish. (Reply at 7.) *See, e.g. Peters-Turnbull v. Bd. of Educ. of City of New York*, No. 96-CV-4914, 1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999) (finding a five-to-ten-month delay "comfortably within the time frames" sufficient for dismissal).

"[A]ll litigants . . . have an obligation to comply with court orders." *Minotti*, 895 F.2d at 103 (quoting *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)). Although "dismissal with prejudice is a harsh remedy to be used only in extreme situations," *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990), Troeger fails to demonstrate factual or legal errors that distinguish the extended noncompliance and repeated disregard of warnings present here from the panoply of similar cases the Court identified previously (*see* Order at 8). Nor does the Court's rejection of lesser sanctions mean they were not adequately considered. Contrary to Troeger's assertions (Mem. at 11-12; Reply at 8), the Court duly considered the full record in evaluating whether to grant dismissal with prejudice (*see* Order at 7-8). It was his conduct, not a lack of particularized analysis as to responsibility, which made dismissal the only appropriate remedy.[4] *Koch v. Rodenstock*, No. 06-CV-6586, 2010 WL 2010892, at *7 (S.D.N.Y. Apr. 23, 2010), *report & recommendation adopted*, No. 06-CV-6586, 2010 WL 2010900 (S.D.N.Y. May 18, 2010).

Dismissal is appropriate "the more the delay was occasioned by plaintiff's personal obstruction, or was designed to benefit the plaintiff's strategic interests." *Dodson v. Runyon*, 86

[4] Troeger's challenge to the sufficiency of the Court's consideration of his and Stahley's culpability in weighing dismissal is particularly curious in light of his "accept[ing] responsibility" for failing to appear and instructing counsel not to serve discovery. (Reply at 8.)

F.3d 37, 40 (2d Cir. 1996); *accord Valentine v. Museum of Mod. Art*, 29 F.3d 47, 50 (2d Cir. 1994) (affirming dismissal due to "sustained and willful intransigence in the face of repeated and explicit warnings"). Troeger's record of avowedly sanctionable conduct (Reply at 7-8) demonstrated an approach to the Court's orders as matters of convenience, not compliance. It was accordingly well within the Court's discretion and duty to enforce Rule 37 in such a way as to deter such conduct. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

**B. Rule 37 Sanctions**

Plaintiff also seeks to set aside the award of monetary sanctions, contending that the Court adopted both its total award and allocation without sufficient evidentiary support or due process under Rule 37. (Mem. at 8-9.) Rule 37 "places the burden on the disobedient party to avoid [an award of] expenses." *Zimmerman*, 150 F.4th at 146 (quoting *Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir. 1999)). Courts "must order" the payment of reasonable expenses when confronted with sanctionable conduct under Rule 37(b)(2)(C) not merely to defray costs, but as a deterrent measure "to ensure that a party will not benefit from its own failure to comply with discovery." *Montesa v. Schwartz*, No. 12-CV-6057, 2015 WL 13173166, at *3 n.4 (S.D.N.Y. Oct. 13, 2015) (quotation marks omitted). Imposing sanctions requires that the party to be sanctioned receive specific notice and an opportunity to be heard. *Derek Smith L. Grp., PLLC v. E. Side Club, LLC*, No. 23-1015, 2024 WL 1756106, at *2 (2d Cir. Apr. 24, 2024), *cert. denied sub nom*. *Cohen v. Derek Smith L. Grp., PLLC*, 145 S. Ct. 439 (2024). So long as the requirements of due process are satisfied, however, "[m]onetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15-CV-1095, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016).

At the outset, the Court again observes that Troeger is reprising arguments and the account of events he advanced prior to the Court's Order. (*See* ECF No. 113 at 3-4.) Troeger specifically argues that the Court erred factually in finding that Troeger and Stahley failed to meet and confer regarding Rule 37 sanctions by October 24, 2025, and including Stahley's statement at the October 16, 2025 conference, indicating willingness to pay reasonable expenses. (Mem. at 8-9.) He also argues that awarding sanctions without time sheets or other documentation was a legal error in violation of due process and furnished Troeger no opportunity to negotiate. (Mem. at 12-13.) This argument mirrors Troeger's previous assertion that absent specific documentation, "[o]ne cannot negotiate fees without knowing the hours claimed." (ECF No. 113 at 3-4.)

Troeger's recurrent articulations of this objection, however, demonstrate the exact opportunity to be heard that he denies. (ECF Nos. 100, 101, 111-113.) Troeger and his counsel were alerted on October 3, 2025, to their obligation to pay reasonable expenses. (ECF No. 90.) Despite the Court instructing the parties to attempt to reach a resolution with Defendants regarding Rule 37 sanctions (ECF No. 106 at 19), Troeger's failure to engage in negotiations beyond aberrant requests for data continued his pattern of noncompliance (ECF No. 99 at 1-2). Troeger is correct to identify the foundation of due process as requiring that: "(1) the party seeking to be compensated provide competent evidence . . . and (2) the party facing sanctions have an opportunity to challenge the accuracy of such submissions and the reasonableness of the requested fees and expenses." *Mackler Productions, Inc. v. Cohen*, 225 F.3d 136, 146 (2d Cir. 2000). The precise documentation that Troeger sets forth as a requirement, however, is merely one path within the Court's discretion to determine amounts. *Id.* An amount attested to in letters, confirmed by the Court's own assessment of the record, and acknowledged as at least

reasonable by Troeger's own counsel (ECF No. 106 at 17) is another. To reopen a negotiation Troeger persistently failed to engage with would be to provide Troeger the benefit of his own delay, subverting the purpose of sanctions without surmounting the heavy burdens of Rules 37 and 59(e).

**C. Rule 11 Motion Termination**

Troeger also seeks reconsideration of his motion to strike (ECF No. 111-2; ECF No. 111-3), which was among a range of motions terminated by the Court as a result of the Rule 37 dismissal (Order at 13). Troeger argues that the Court should have considered and granted his motion to strike Defendants' Rule 37 dismissal motion as a matter of due process, asserting that the use of letters provided neither notice nor opportunity to respond.[5] (Mem. at 13-14.)

As previously established, however, Troeger received ample notice of his obligations and the perils of noncompliance. (*See supra* §§ I, III(A).) This included warnings of potential dismissal and sanctions from the Court in September and October of 2025. (*See* ECF No. 86; ECF No. 96.) Indeed, the Court's orders surrounding the October 16, 2025 conference clarified the stakes and mandated a response, providing Troeger with the requisite notice and opportunity to respond. (*See* ECF Nos. 96, 97, 98.) A request being made via a letter does not preclude Rule 37 relief, including dismissal, so long as the requirements of due process are met. *See Alvarado v. Manhattan Worker Career Ctr.*, No. 01-CV-9288, 2002 WL 31760208, at *6-7 (S.D.N.Y. Dec. 10, 2002) (describing a letter seeking sanctions or dismissal pursuant to Rule 37 as sufficient due process, particularly in a case of willful noncompliance). Accordingly, Troeger's motion to strike was properly terminated, and he presents no basis to disturb the Court's dismissal pursuant to Rule 37.

[5] In doing so, Troeger impermissibly recycles an argument previously presented to the Court. (*See* ECF No. 101 at 1-2.)

## IV. Conclusion

For the foregoing reasons, Troeger's motion to alter or amend the judgment is DENIED. Troeger's request to withdraw the filing at Docket Number 120 is denied as moot.

The Clerk of Court is directed to close the motion at Docket Number 118.

SO ORDERED.

Dated: July 13, 2026
New York, New York

J. PAUL OETKEN
United States District Judge